IN THE UNITED STATES DISTRICT COURT
                              FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


LEONARD G. YOUNG, JR.,            :
                                  :
        Plaintiff                 :     CIVIL NO. 3:CV-12-2408
                                  :
    v.                            :
                                  :     (Judge Conaboy)
                                  :
DEPARTMENT OF CORRECTIONS,        :
ET AL.,                           :
                                  :
        Defendants                :
_____

**MEMORANDUM**
**Background**

Leonard G. Young, Jr., an inmate presently confined at the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has also submitted a request for leave to proceed in forma pauperis. See Doc. 7.

Named as Defendants are the Pennsylvania Department of Corrections (DOC) and the following SCI-Rockview officials: Superintendent Marirosa Lamas, Psychiatrist Doctor Burke, and Mr. Parsons of the prison's "Psych staff." Doc. 1, ¶ 5. Plaintiff describes himself as having "a very extensive mental history" including multiple suicide attempts and self mutilation starting at the age of seven. Id. at ¶ 10. Young also admits to prior extensive drug and alcohol use. Exhibits attached to the Complaint note that Young's past diagnoses include "posttraumatic stress

1

disorder, bipolar disorder, schizoaffective disorder, impulse control disorder intermittent explosive disorder, multiple personality disorder, dissociative identity disorder, malingering, antisocial personality disorder, borderline personality disorder, and polysubstance abuse." Id., Exhibit J, p. 1. His prior medications include " Risperdal, Haldol, Navane, Thorazine, Doxepin, Celexa, Lithium and valproic acid." Id. According to Young's exhibits, his recent diagnoses include "adjustment disorder - mixed type, depression versus malingering, impulse control disorder, and antisocial personality disorder - severe." Id. Other medical records submitted by Plaintiff note that there are "inconsistencies between Mr. Young's reported symptoms and objective manifestations of his symptoms." Id. at Exhibit K, p. 2.

On August 29, 2012, the Complaint states that Plaintiff was assigned to the SCI-Rockview Psych Unit by Nancy Mayor of the Psych staff because of his paranoid belief that prison guards were poisoning his food. During an assessment by Doctor Burke and Shaw of the Psych Staff, Plaintiff stated that he posed a threat to his own safety. It is alleged that following a 48 hour stay in a Psych Unit observation cell, Doctor Burke did not offer Plaintiff any medications or treatment and concluded that the prisoner was being manipulative and could be returned to the Restricted Housing Unit (RHU). As a result, Young claims that he began a hunger strike which lasted until September 5, 2012.

On September 6, 2012, Plaintiff allegedly tried to hang

2

himself in an RHU observation cell because he was not receiving any treatment. He was then seen by Dr. Burke and members of the Psych staff. Plaintiff states that he made twelve (12) additional attempts to kill himself after being returned to the Psych Unit. As a result, he was put in 5 point restraints on a bed, given a helmet, injected with Haldol and Adavan against his will and transferred to the prison's Mental Health Unit (MHU). During a five (5) day stay in the MHU Young was seen daily by Doctor Burke and another unidentified physician. On September 12, 2012, Plaintiff was released from the MHU at which time Superintendent Lamas purportedly hold Young that he needed to be held accountable for his actions.[1] He was also purportedly taken off all medication. During the next month Plaintiff was held in an observation cell under constant camera supervision but was not seen by the psych staff. During this period Young again went on a hunger strike which lasted approximately ten (10) days.

On October 15, 2012, Plaintiff discovered that Defendants Burke and Parsons developed an Individual Treatment Plan (ITP) for him without obtaining his input. The Complaint additionally alleges that Defendants violated Plaintiff's due process rights by not affording him opportunity to administratively appeal his ITP.

In conclusion, Young contends that he has been denied adequate treatment for his serious mental health issues and that an improper

---

[1] Apparently, the conduct which led to Plaintiff's RHU placement.

3

ITP was developed for his care. Plaintiff next asserts that he has been put in harm's way by being forced to stay around persons known to have been accused of sexual misconduct. The Complaint also contends that Plaintiff: was subjected to verbal harassment and insults; the victim of a conspiracy; suffered violation of his equal protection rights; and violation of his rights under the Americans with Disabilities Act and the Mental Health Act. Plaintiff seeks injunctive and declaratory relief as well as compensatory damages.

## Discussion

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2)provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319,

4

327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

## DOC

The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). It has been similarly concluded by the Court of Appeals for the Third Circuit that Pennsylvania's Board of Probation and Parole

5

could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies such as the state police are not "persons" subject to liability in § 1983 actions brought in federal court. The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71. "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990).

After Will, the Third Circuit Court of Appeals directed that in determining whether a state agency is entitled to Eleventh Amendment immunity, a federal court should consider: whether the state would be responsible for the payment of any judgment rendered against the agency; the source of the agency's funding; and the degree of autonomy enjoyed by the agency, as well as other similar factors. Bolden v. Southeastern Pennsylvania Transp. Auth., 953 F.2d 807, 818 (3d Cir. 1991).

In the instant case, payment of any judgment rendered against Defendant DOC, a Pennsylvania state agency, would have to be paid out of the Pennsylvania state treasury. Furthermore, Defendant DOC

receives all of its funding from the state and does not enjoy any measure of autonomy. Therefore, it is clear under Pugh, Will, and Bolden that the DOC is not a "person" for the purpose of § 1983 and, therefore, not a properly named defendant. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000) (a state prison and a department within the prison are not persons and may not be sued under § 1983).

**Personal Involvement**

With respect to the claims against Superintendent Lamas, civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are

7

constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the standards announced in Rode and Hampton, Plaintiff's action to the extent that it seeks to establish liability against Superintendent Lamas solely based upon her supervisory capacity within SCI-Rockview cannot proceed. Such respondeat superior type assertions are simply insufficient for

8

establishing civil rights liability. Likewise, any attempt by Young to set forth claims against Defendant Lamas solely based upon any responses or lack of action to his administrative grievances is equally inadequate under Flick and Alexander

**Verbal Threats**

Plaintiff alleges that he was subjected to verbal harassment See Doc. 1, ¶ 34. However, here are no specific claims of verbal abuse levied against any of the named Defendants.

The use of words generally cannot constitute an assault actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment or threats, with some reinforcing act

9

accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal harassment allegedly voiced against Inmate Young was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that any of the alleged verbal abuse was accompanied by any physically intrusive behavior or made by any of the named Defendants. Given the vague circumstances described by Plaintiff, any verbal remarks which may have been made by any of the named Defendants were not of the magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.

**Deliberate Indifference**

Plaintiff alleges that there was deliberate indifference to his medical needs. The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v.

11

Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

Given the liberal construction afforded to the pro se Complaint, Plaintiff has arguably alleged satisfaction of the serious medical need requirement at this early juncture in the proceedings. Regardless of the issue of whether the serious medical need requirement has not been satisfied by the allegations raised in the Complaint, it is nonetheless apparent that Young has failed to satisfy the second prong of the deliberate indifference analysis.

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

12

However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.")

Plaintiff acknowledges that during the relevant time period he was housed in the prison's Psych Unit and Mental Health Unit. Moreover, Plaintiff states that he was prescribed medication and was evaluated by Doctor Burke and other members of the prison's mental health staff on multiple dates. Young also asserts that a personalized treatment plan was developed with respect to his care. The basis of Plaintiff's present action appears to arise from a determination that he was engaging in manipulative behavior and a September 2012, decision to remove him from all medications. Young admits that although he has received multiple diagnoses and been treated with multiple medications since the age of seven his mental health problems still persist.

Moreover, a prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim. Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979). Accordingly, since the Complaint acknowledges that Young was provided with ongoing treatment and that his claims are solely premised upon his disagreement with medical determinations and evaluations made by Doctor Burke and other members of the prison's mental health care staff, a viable deliberate indifference claim

13

has not been stated under Estelle. This determination is bolstered by the fact that Plaintiff has not alleged that there was any specific medical treatment which he should have received but was denied for a non-medical reason or that any prescribed care was improperly delayed.

At best, Plaintiff's allegations set forth a claim of negligence against Defendants Burke and Parsons. However, allegations which sounds in negligence cannot be pursued under § 1983 under Durmer.

It is also undisputed that Superintendent Lamas is a non-medical professional. The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Based on the reasoning employed in Durmer, since there are no facts asserted which could establish that Superintendent Lamas had any personal involvement whatsoever in Plaintiff's medical treatment and since the Complaint admits that Young was receiving care from the SCI-Rockview mental health staff, under the standards announced in Durmer a viable deliberate indifference claim has not been set forth against Defendant Lamas.

14

**Conspiracy**

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).

15

A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Based upon a liberal review of the Complaint, it is clear that Plaintiff has failed to state a viable conspiracy claim against any Defendant. Young has not alleged any facts showing communication, cooperation, or command among any Defendants from which an agreement could be inferred. Rather, it appears to this Court that Plaintiff is simply speculating that the alleged unconstitutional acts undertaken by the SCI-Rockview officials establishes their involvement in the purported conspiracy. There are simply no averments of fact that reasonably suggest the presence of an agreement or concerted activity between any correctional officials to violate Plaintiff's civil rights. Dismissal will be granted in favor of the Defendants with respect to Young's wholly speculative claims of conspiracy.

**Equal Protection**

In his complaint, Plaintiff also raises a vague claim that his rights under the Equal Protection Clause were violated. See Doc. 1, ¶ 48.

The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar

v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

There is no viable allegation in the present case that Plaintiff was treated differently than other prisoners suffering from mental health issues. Young's vague assertion of an equal protection violation cannot proceed.

## **ADA/Mental Health Act**

Plaintiff generally contends that his rights under the ADA and the "Mental Health Act" are being violated because he is not being afforded sufficient mental health treatment.[2] Doc. 1, ¶ 51.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.[3] The ADA seeks "to assure even handed treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving

---

[2] It appears that Plaintiff is referring to Pennsylvania's Mental Health Laws. See Title 50 of the Pennsylvania Code.

[3] The regulations implementing the ADA define a "qualified individual with a disability" as:
> "An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

17

financial assistance]. Southeastern Community College v. Davis, 442 U.S. 397 (1979).[4] . P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions. See Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). However, based upon a careful review of the Complaint there are no contentions that Plaintiff is being denied access to any benefits, programs, activities due to any disability. Accordingly, the Plaintiff's ADA claim will be dismissed.

Plaintiff is arguably attempting to establish liability against the individual Defendants on the basis of a violation of Pennsylvania's mental health laws.[5]

It is well settled that federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). When rendering a determination regarding pendent jurisdiction district courts should

---

[4] The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

[5] In order to establish such a claim Plaintiff would be required to establish willful misconduct or gross negligence. See title 50 Pa. Code § 7114.

18

consider judicial economy, convenience, and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, if a federal claim is dismissed prior to trial, the district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). Since this Court has dismissed the federal claims against Defendants, jurisdiction will be declined with respect to any pendent state law claims that Plaintiff wishes to pursue.

**Conclusion**

Since Young's federal claims are "based on an indisputably meritless legal theory," those claim will be dismissed, without prejudice, as legally frivolous. Wilson, 878 F.2d at 774. In addition, jurisdiction will be declined with respect to any Pennsylvania state law claims which Plaintiff wishes to pursue. An appropriate Order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: JANUARY 7, 2013

19